BIG SKY MUSIC et al.

v.

Herman Charlie TODD.

CAYMAN MUSIC, LTD., et al.

v.

Herman Charlie TODD and
Steve Bawkin.

Civ. A. Nos. 854 and 869.

United States District Court,
S. D. Georgia,
Waycross Division.

Aug. 27, 1974.

Leon A. Wilson, II, Waycross, Ga., for defendants.

## CONSOLIDATED ORDER

ALAIMO, District Judge.

In these copy right infringement actions for damages and injunctive relief, the parties have agreed to a statement of the facts in which defendants effectively admit the infringement of plaintiffs' copyrights on musical compositions. However, defendants argue that plaintiffs are estopped to assert the infringements on a theory of equitable estoppel as applied in Tempo Music, Inc. v. Myers, 407 F.2d 503 (4th Cir. 1969).

Defendant Todd owned, and defendant Bawkin operated a night club in Waycross, Georgia, where musical compositions, copyrighted by plaintiffs, were performed for a paying audience by musicians hired by defendants and by a "juke box" into which patrons deposited coins. The infringements occurred on the nights of April 14 and October 12, 1973.

Prior to the infringements, representatives of the American Society of Composers, Authors, and Publishers (ASCAP), as agents for plaintiffs and hundreds of other composers, approached the defendants at least nine times to solicit a license to allow defendants to present authorized public performances of ASCAP tunes. On each occasion defendants refused the license arrangement. On March 3, 1973, Mr. I. T. Cohen, plaintiffs' attorney, provided defendants, on the request of their attorney (Mr. Leon A. Wilson, II) a list of ASCAP composers and stated:

"If, however, you cannot get the sheet music, if you will send me the names of the songs, I will have same edited for you and let you know which ones are owned by members of ASCAP."

(Consolidated Agreed Statement of Facts, Exhibit J). At the same time in response to Mr. Wilson's request for a

I. T. Cohen, Atlanta, Ga., for plaintiffs.

current list of ASCAP tunes, Mr. Cohen replied:

"As you know, music is being written and published every day and it is impossible for ASCAP to furnish you with a daily list of the songs owned by its members." (*Id.*)

Shortly thereafter, Mr. Wilson renewed his demand that ASCAP "furnish me with the titles to the musical compositions on which its members hold copyrights. Otherwise, it will be impossible for my clients to prevent the playing of such compositions in their places of business." (Consolidated Agreed Statement of Facts, Exhibit K). On March 6, 1973, Mr. Wilson made a similar request to ASCAP:

"I herewith demand that you furnish my clients, through me, with a list of all musical compositions upon which copyrights are owned by your members so that they may prevent an accidental infringement of such copyrights by the bands which they employ. * * * I will expect the list furnished to be supplemented on a reasonable basis as new songs are brought within the terms of the copyright law by your members." (Consolidated Agreed Statement of Facts, Exhibit L).

On March 7, 1974, Mr. Cohen again advised Mr. Wilson that it would be impossible for ASCAP to provide the requested list of ASCAP tunes but that, upon his request, ASCAP would inform him whether any tunes submitted to it are owned by ASCAP members. (Consolidated Agreed Statement of Facts, Exhibit M). Likewise, ASCAP advised Mr. Wilson of the impracticality of its furnishing a list of all ASCAP tunes and of its practice of informing "any user who furnishes a list of compositions as to which of them are in its repertory." (Consolidated Agreed State-ment of Facts, Exhibit N). Defendants do not contend that they submitted a list of tunes to ASCAP to ask if the tunes were in ASCAP's repertory or that ASCAP refused to provide the service on request.

### Defense of Equitable Estoppel

Defendants seek to take advantage of an equitable defense carved out by the Fourth Circuit Court of Appeals in a factually similar infringement action.

In Tempo Music, Inc. v. Myers, *supra,* the Court held that the "plaintiffs are estopped to assert [the] infringement and ask for damages and counsel fees" where an ASCAP representative, as agent for the plaintiffs, failed to advise the defendant of the comparison service, (footnote omitted) 407 F.2d at 507. In that case, as in the cases at bar, when the defendant was approached with the ASCAP license offer, he refused and demanded a list of musical compositions covered by the ASCAP license.

There, however, in contrast to the cases at bar, the ASCAP agent not only refused to provide the list but also failed in nine correspondences with the defendant to advise him of ASCAP's mandatory service of comparing a list of tunes to be performed by defendant against the ASCAP list of tunes.[1] The Fourth Circuit Court of Appeals reasoned that plaintiffs were equitably estopped to assert their infringement claims because to do otherwise "would enable them to profit from the dereliction of their own agent, ASCAP." 407 F.2d at 507.

 In the cases at bar, plaintiffs' attorney and ASCAP itself, on at least two occasions, advised the defendants of the editing service and the availability of the list for public inspection in New York City. Unlike the situation in *Tempo,* here the agent, ASCAP, has not been

1. An Amended Consent Judgment in United States v. American Society of Composers, Authors and Publishers, Civil Action No. 13–95 (S.D.N.Y. March 14, 1950), requires that "ASCAP shall upon written request from any prospective user inform such user whether any compositions specified in such request are in the ASCAP repertory . . . ." This language was construed in Tempo Music, Inc. v. Myers, 407 F.2d at 507, as placing ASCAP under a duty to advise prospective users of its editing service.

derelict in its duties and it has done everything which could reasonably be required of it. Consequently, the Court concludes that plaintiffs have come into this Court with "clean hands" and that defendants have failed to establish their equitable defense of estoppel.

### The Infringement

In accordance with the parties' Consolidated Agreed Statement of Facts, the Court finds that:

(1) Plaintiffs, Big Sky Music, Strong Arm Music, Cherry Lane Music Co., Miles Ahead Music, Cayman Music, Ltd., and Mills Music, Inc., respectively are the proprietors of valid copyrights in the following musical compositions: "Lay Lady Lay," "Mercedes Benz," "Take Me Home, Country Roads," "Them Changes," "I Can See Clearly Now," and "Lovesick Blues";

(2) On the night of April 14 and 15, 1973, and the night of October 12 and 13, 1973, defendant Todd owned the premises known as Steve's Pine Room where defendant Bawkin operated and managed a night club for the entertainment of the public;

(3) On the night of April 14 and 15, 1973, musicians, hired by defendants, performed "Lay Lady Lay," "Take Me Home, Country Roads," and "Them Changes" and a "juke box" rendered a mechanical reproduction of "Mercedes Benz" in public performances for profit at Steve's Pine Room without the permission of the proprietors; and

(4) On the night of October 12 and 13, 1973, a "juke box" on the premises of Steve's Pine Room rendered mechanical reproductions of "I Can See Clearly Now," "Mercedes Benz," and "Lovesick Blues" in public performances for profit without the permission of the proprietors.

■ The Court concludes as matters of law that:

(1) Defendants infringed plaintiffs' copyrights on the above-stated dates; and

(2) Defendants are jointly and severally liable for the infringements.

*See* Chappell & Co. v. Middleton Farmers Market & Auction Co., 334 F.2d 303 (3d Cir. 1964); Warner Brothers—Seven Arts, Inc. v. Kalantzakis, 326 F.Supp. 80 (S.D.Tex.1971), and Bourne v. Fouche, 238 F.Supp. 745 (E.D.S.C.1965).

■ Since plaintiffs have offered no proof of actual damages, the Court finds that plaintiffs are entitled to an award of $250.00 as minimum damages in each cause of action. *See* Edwin H. Morris & Co. v. Burton, 201 F.Supp. 36 (E.D.La.1961). Additionally, plaintiffs are entitled to a decree enjoining further infringements by these defendants. Finally, plaintiffs will be allowed to recover reasonable attorney fees and costs.

Counsel are directed to submit a consolidated proposed final order and decree relating to an injunction, total damages, reasonable attorney fees and costs. If the parties cannot agree within a reasonable period, the Court will enter an appropriate order and decree.